793 P.2d 121

**Mary Esther CARRILLO, surviving wife of Salvadore Carrillo, deceased, on her own behalf and as personal representative of Salvadore Carrillo, a deceased person, for and on behalf of the surviving children, Cynthia Carrillo and Salvadore Carrillo III, Plaintiffs–Appellants,**

v.

**EL MIRAGE ROADHOUSE, INC., an Arizona corporation, Defendant–Appellee.**

No. 1 CA–CV 88–349.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 15, 1990.

Review Denied July 3, 1990.*

* Corcoran, J., of the Supreme Court, was not present and did not participate in the determination of this matter.

David L. Sandweiss, Phoenix, for plaintiffs-appellants.

Struckmeyer & Wilson by Donald R. Wilson and Bradford S. Mead, Phoenix, for defendant-appellee.

## OPINION

VOSS, Judge.

The issue in this appeal is whether the duty expressed in *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983), *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983), and A.R.S. § 4-244(14) is broad enough to proscribe a liquor licensee from indirectly providing alcoholic beverages to

intoxicated persons. We resolve the issue in the affirmative.

The appellant is Mary Esther Carrillo, the wife of Salvadore Carrillo (Salvadore), the decedent, on her own behalf and as personal representative of Salvadore, and on behalf of the surviving children, Cynthia Carrillo and Salvadore Carrillo III (Carrillo). Appellee is the El Mirage Roadhouse, Inc., a tavern in El Mirage, Arizona (Roadhouse).

Carrillo brought this tort action for damages against the Roadhouse alleging that the Roadhouse's negligence in serving alcoholic beverages to Salvadore caused his death. The Roadhouse moved for summary judgment, contending it had satisfied its responsibility by refusing to serve Salvadore when it became apparent he was intoxicated. Carrillo responded that the Roadhouse had not appropriately discharged its duty of care to Salvadore because it allowed him to continue consuming beer, even after it determined he was intoxicated, by "laundering" the beer through other patrons. The trial court granted the Roadhouse's motion for summary judgment.

In reviewing the record, we must view the evidence in a light most favorable to the party opposing the motion for summary judgment. *Franko v. Mitchell*, 158 Ariz. 391, 393, 762 P.2d 1345, 1347 (App.1988). Summary judgment is only appropriate where there is no genuine dispute as to any material fact, where only one inference can be drawn from the facts, and based upon the facts, the moving party is entitled to judgment as a matter of law. *Auto–Owner's Ins. Co. v. Moore*, 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App.1988).

## FACTS

On July 4, 1985, Salvadore was drinking in the Roadhouse tavern. He arrived at the tavern at approximately 5:00 p.m. that evening and remained there drinking until approximately 9:30 or 10:00 p.m. He then left with a friend for approximately an hour, returning to the tavern at 10:30 or 11:00 p.m. Hans Herrmann, one of the owners of the tavern and one of the bartenders on duty that night, testified in his deposition that after Salvadore returned to the tavern, he was visibly intoxicated and because of his intoxication, Herrmann refused to serve him any more beer. However, Herrmann also testified that he guessed Salvadore's friends were buying beer and passing it to Salvadore as that is the usual practice in the tavern.

Q. So between 5:30 and 9:00 they alternated buying a round for everybody?
A. That's how usually it goes. One buys and the next person buys.

\* \* \* \* \* \*

Q. Do you think that his friends gave him something to drink?
A. That's usually how it works.

\* \* \* \* \* \*

Q. So when you decide that a person has had enough to drink you don't serve them any more but you know that his friends are going to get some for him?
A. No. That was maybe that one incident, but it's not now any more.

\* \* \* \* \* \*

Q. But you also knew that his friends were likely to get drinks for him?
A. I didn't know that. I guessed that they were.

Linda Garza, another bartender on duty that night, testified in her deposition that she did not directly serve Salvadore any beer past 11:00 p.m. but she did serve rounds of beer to Salvadore's friends who then gave the beer to Salvadore.

Q. Did you serve him any drinks past 11:00 o'clock that night?
A. No, I didn't.
Q. Do you know if anybody else did?
A. Yes, Junior and Steve, they ordered rounds and I served them.
Q. And then they gave some to Sal?
A. Yes.

\* \* \* \* \* \*

Q. How did you know that they were giving beer to Sal?
A. How would I know? Because Junior kept telling me, "Give me three—two more other beers for me and Sal."

Garza testified that even though she did not directly serve Salvadore, she observed Salvadore having two or three beers after 11:00 p.m.

Q. Do you know how many beers any of Sal's friends gave him after 11:00 o'clock?

A. A couple.

Q. Two?

A. Um-hum, yes.

Q. Maybe more?

A. Two or three.

Salvadore left the tavern around 12:30 or 1:00 a.m. As he was driving home he was fatally injured in a one car accident. The medical examiner's report indicated a .21% blood alcohol level; the traffic accident report indicated that the accident was alcohol related.

■ Subsequent to Salvadore's death, the legislature enacted A.R.S. § 4–312 which bars claims similar to those in the present case where the injured party is the consumer, and not a third party. As A.R.S. § 4–312 is not retroactive, it does not bar Carrillo's claim.

The Arizona Supreme Court in *Ontiveros* abolished the common law doctrine of tavern owner nonliability and held as a matter of common law and statute that those who furnish alcohol have a duty to exercise reasonable care for the protection of others. 136 Ariz. at 513, 667 P.2d at 213. The court held that the duty includes ceasing to furnish alcohol to an intoxicated person in order to protect members of the public. *Id.* at 510, 667 P.2d at 210. In *Brannigan*, the supreme court extended the duty created in *Ontiveros* to require the supplier of liquor to exercise reasonable care in furnishing liquor to those who, because of their over-indulgence, may injure *themselves*, as well as others. 136 Ariz. at 516, 667 P.2d at 216. In reversing the common law doctrine of tavern owner nonliability, the *Ontiveros* court referred to the "frightful toll" in deaths and injuries each year in which alcohol is a contributing cause. 136 Ariz. at 507, 667 P.2d at 207. The tragedy continues.

In 1983 the *Ontiveros* court cited 25,000 alcohol related traffic fatalities. 136 Ariz. at 507, 667 P.2d at 207. The most recent nationwide statistics available from Mothers Against Drunk Drivers show these figures are virtually unchanged; in 1987 there were 23,632 alcohol related traffic fatalities. Arizona statistics are no better than the national average. The Arizona Department of Transportation's (ADOT) 1988 preliminary statistics indicate there were 8,972 accidents involving drunk drivers. ADOT's 1989 preliminary statistics indicate that in the first six months of 1989 alone there were 5,572 accidents involving drunk drivers.

■ The common law is a dynamic and growing thing and its rules arise from the application of reason to the changing condition of society. *Brigance v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300, 303 (Okla. 1986) (quoting *McCormack v. Oklahoma Pub. Co.*, 613 P.2d 737, 740 (Okla.1980). The development of the law of torts is peculiarly a function of the judiciary. *Lewis v. Wolf*, 122 Ariz. 567, 596 P.2d 705 (1979) (*overruled on other grounds, Ontiveros v. Borak*, 136 Ariz. at 508, 667 P.2d at 208). Because duty and liability are matters of public policy, they are subject to the changing attitudes and needs of society. The frequency of accidents involving drunk drivers and the attendant carnage to an unsuspecting public compel us to continually scrutinize the scope of the common law in this area. *See Ontiveros*, 136 Ariz. at 504, 667 P.2d at 204; *Reben v. Ely*, 146 Ariz. 309, 705 P.2d 1360 (App.1985).

## NEGLIGENCE

■ In order to maintain an action in negligence, four elements must be shown: 1) a duty, or obligation, recognized by law, requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks, 2) a failure on defendant's part to conform to the standard required, 3) a reasonably close causal connection between the conduct and the resulting injury; and 4) actual loss or damages. *Ontiveros*, 136 Ariz. at 504, 667 P.2d at 204.

■ It is clear that the licensee is under a common law duty not to sell alcohol to an intoxicated person where the sale creates an unreasonable risk of harm to the intoxicated person or to others. *Ontiveros,* 136 Ariz. 500, 667 P.2d 200; *Brannigan,* 136 Ariz. 513, 667 P.2d 213.[1] The liquor licensee's duty is also found in statute. A.R.S. § 4–244(14) provides that a licensee or other person shall not serve, sell, or furnish spirituous liquor to an intoxicated or disorderly person. In the present case, after the Roadhouse determined Salvadore was intoxicated, it did not serve him directly but served his friends, who then passed the beer to Salvadore. Our charge, then, is to determine whether the duty not to furnish alcohol to intoxicated persons is broad enough to include any indirect furnishing of alcohol.

Several courts in other states have addressed fact situations similar to those herein. In those cases the courts found the dramshop, or in some cases a convenience market, had a duty and breached it when they sold alcohol to one person with actual or constructive knowledge[2] that someone other than the purchaser—an intoxicated person—was consuming the alcohol. *Fette v. Peterson,* 404 N.W.2d 862 (Minn.App. 1987); *Thompson v. Victor's Liquor Store, Inc.,* 216 N.J.Super. 202, 523 A.2d 269 (1987); *Bell v. Poindexter,* 336 Ill.App. 541, 84 N.E.2d 646 (1949); *see also Great Central Insurance Company v. Tobias,* 37 Ohio St.3d 127, 524 N.E.2d 168 (1988) (where the court found the dramshop not liable because the sale of the alcohol was made to a nonintoxicated patron without knowledge that the drink was in fact for an intoxicated patron); *Anderson v. Dale,* 90 Ill.App.2d 332, 232 N.E.2d 767 (1967) (where the actual or constructive knowledge requirement was not met); *Welch v. Convenient Food Mart, No. 550,* 106 Ill. App.3d 131, 62 Ill. Dec 96, 435 N.E.2d 894 (1982) (where the court held that the licensee did not have actual or constructive knowledge that the beer it sold would be shared by buyer). We agree with these cases.

In *Bell,* a minor driver of an automobile, Sparr, entered a tavern with two minor friends. The friends purchased alcohol for themselves, Sparr, and one other minor. After drinking the alcohol, Sparr, driving while intoxicated, hit another car and fatally injured its occupant. The question presented to the court was whether Count IV in the complaint, which stated that the dramshop was liable for the decedent's injuries because it knew the purchasers of the alcohol were going to share the alcohol with Sparr, stated a cause of action. The court held that Count IV did state a cause of action because if the seller knew or had good reason to believe when he sold liquor that the purchaser intended to furnish it to an intoxicated person who causes damage, the seller will be liable. 336 Ill.App. 541, 84 N.E.2d 646. *In Great Central,* the court found no liability where a person in a bowling lane tavern purchased ten shots of whiskey for another person in the tavern because the alcohol sales were made to a person who was not intoxicated and there was no knowledge that the alcohol was for an intoxicated person. However, the court stated that where the "sale" is made to one person with knowledge that the alcohol in fact was for another person who was intoxicated, then the state statute, which prohibited alcohol sales to intoxicated persons, could apply. 37 Ohio St.3d 127, 524 N.E.2d 168.

A.R.S. § 4–244(14) does not require a *direct* sale in order to find a duty on the part of the licensee. Common rules of statutory interpretation require us to effectuate the purpose of legislation. *Mendelsohn v. Superior Court,* 76 Ariz. 163, 261 P.2d 983 (1953). The clear purpose of A.R.S. § 4–244(14) is to prohibit a licensee from providing alcohol to an intoxicated person. To allow a licensee to frustrate this purpose by selling alcohol to a person who in turn gives the alcohol to an intoxicated

---

**1.** It is recalled that A.R.S. § 4–312 now bars actions by the consumer, but this statute does not apply herein as it became effective after the subject accident.

**2.** *Blacks Law Dictionary,* 284 (rev. 5th ed. 1979) defines constructive knowledge as, "If one by exercise of reasonable care would have known a fact, he is deemed to have had constructive knowledge of such fact...."

person, when the licensee has actual or constructive knowledge of the act, would do violence to the legislation. Our interpretation is particularily sound when one considers that the mayhem imposed by the intoxicated driver is the same whether the route the alcohol took before impairing the brain was direct or indirect—the constant is the source—the licensee.

We therefore find that the duty expressed in *Ontiveros, Brannigan,* and in A.R.S. § 4–244(14) is broad enough to include the duty not to sell, serve or furnish alcohol to anyone regardless of their condition if a licensee has actual or constructive knowledge that an intoxicated person will ultimately receive and consume the alcohol. Whether the licensee herein actually or constructively possessed this knowledge goes to the issue of breach of duty.

■■■■ Under the common law, once duty is established, the law requires that a defendant conform to a standard of care. *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985). In negligence cases, the standard of care is usually reasonable care under the circumstances. Or, put another way, conduct will be negligent if defendant acts unreasonably in light of the known or foreseeable risks. *Id.* at 356–57, 706 P.2d 368–69. If reasonable people could differ as to whether the danger of some injury is foreseeable, the question of negligence is one of fact for a jury to decide. *Id.* at 357–58, 706 P.2d 369–70; *City of Phoenix v. Weedon,* 71 Ariz. 259, 264, 226 P.2d 157, 160 (1950).

■■■■ Actual or constructive knowledge requires more than knowing merely that unspecified, absent persons will be drinking. The licensee must have actual or constructive knowledge that a particular person will be drinking. *Welch,* 106 Ill. App.3d 131, 62 Ill.Dec. 96, 435 N.E.2d 894. The finder of fact looks to several factors to determine whether the licensee should reasonably have foreseen that the purchaser of the alcohol would not be the only consumer of the alcohol. The finder of fact must look to the quantity of alcohol purchased, statements made at the time of purchase, and any other relevant circumstances of the sale. *Thompson,* 216 N.J. Super. at 204, 523 A.2d at 271. Whether the Roadhouse breached its duty, whether it acted reasonably under the circumstances, turns on whether it possessed actual or constructive knowledge that Salvadore continued to drink.

■■■■ There is ample evidence from which a trier of fact could determine that the Roadhouse possessed actual or constructive knowledge that Salvadore continued to drink after the bartenders determined they would no longer serve him because he was intoxicated. Herrmann testified that all his customers passed alcohol to one another, and that he guessed Salvadore's friends passed him alcohol. Garza testified that a friend of Salvadore's, after she had refused to serve Salvadore, asked her for drinks for, "me and Sal." She also testified that she saw Salvadore with a few beers that night after she refused to serve him. Indeed, the facts herein indicate that the Roadhouse was well aware Salvadore's friends were passing him beer. Since the Roadhouse knew Salvadore continued to drink, a trier of fact could find that the Roadhouse acted unreasonably. Therefore, summary judgment cannot be supported on the theory that as a matter of law, the Roadhouse did not breach its duty.

■■■■ A duty of care and the attendant standard of conduct can also be found in a statute even though the statute is silent on the issue of civil liability. *Restatement (Second) of Torts,* § 286 comment d (1965) states that when the legislature has adopted a statute requiring certain conduct and imposing either civil or criminal penalties for breach, the court is free to adopt and apply that standard in negligence actions notwithstanding that the legislature has failed to so provide. Therefore, A.R.S. § 4–244(14), which makes it unlawful for a liquor licensee to furnish, serve, or sell alcohol to an intoxicated person, sets the standard of care. *See Ontiveros,* 136 Ariz. at 509, 667 P.2d at 209.

The prevailing rule, recognized in Arizona, is that a breach of a statute intended

**370**

as a safety regulation is not merely evidence of negligence but is negligence per se. *Orlando v. Northcutt,* 103 Ariz. 298, 300, 441 P.2d 58, 60 (1968). The legislature designed the liquor laws at issue in the present case to protect the welfare, health, peace, temperance, and safety of all citizens by providing for the strict regulation and control of alcohol. *Mendelsohn v. Superior Court,* 76 Ariz. at 169, 261 P.2d at 988. The *Ontiveros* court, in discussing whether the legislature designed the liquor laws to regulate the industry or whether they were safety measures, stated, "it is fair to say that in enacting the statutes in question the legislature intended to regulate the business and one of their purposes in doing so was to promote the safety of our citizens." 136 Ariz. at 510, 667 P.2d at 210. The court went on to find that the portion of the statute forbidding the sale of alcohol to an already intoxicated person was enacted to protect members of the public who might be injured as a result of the intoxication which the sale of alcohol aggravated. *Id.*

However, unless a statute is construed to impose an absolute duty, its violation may be excused when, for example, the defendant was unable after reasonable diligence to comply. Thus:

[I]t has been held not to be negligence to violate the letter of the statute because of physical circumstances beyond the [defendant's] control ... [or] where his violation is due to innocent ignorance of the operative facts which make the statute applicable.

*Brannigan,* 136 Ariz. at 517–18, 667 P.2d at 217–18 (quoting W. Prosser, *Handbook of the Law of Torts* § 36 at 198–99 (4th ed. 1971)). The court held that where a violation of the statutes pertaining to furnishing liquor to those who are underage or already intoxicated is shown, negligence exists as a matter of law, but under proper facts the jury may be allowed to find that the violation was excusable. *Id.* The supreme court then recited a nonexclusive list of circumstances that could constitute ex-

cuse. The court said that excuse would be present if a minor looked of age and had what appeared to be proper identification, or if the demeanor of the person served was such that there was no reason to believe that he or she was intoxicated. Since the facts indicate that the Roadhouse was aware Salvadore continued to drink and that it could have exercised control over that activity, a jury could reasonably conclude that there is no excusable negligence and that negligence per se exists. *Id.*

CONCLUSION

We conclude, therefore, that the duty expressed in *Ontiveros, Brannigan,* and in A.R.S. § 4–244(14) is broad enough to include a duty not to sell, serve or furnish alcohol to anyone regardless of their condition if a licensee has actual or constructive knowledge that an intoxicated person will ultimately receive and consume the alcohol. As there are questions of fact on the issues of breach, proximate cause, and damages we reverse the summary judgment granted by the trial court and remand for further proceedings not inconsistent with this opinion.

CONTRERAS, P.J., and
KLEINSCHMIDT, J., concur.