801 P.2d 456

Claudia BRUCE and Norman D. Bruce, husband and wife; Norman D. Bruce, individually and as father and next best friend of the minor children of Claudia Bruce; Carol Lee Bruce, Nancy Dea Anne Bruce; Cynthia L. Davis; and Norman Bruce; Claudia Bruce, by and through her duly appointed conservator, Nancy Elliston, Plaintiffs–Appellants,

v.

CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation, Defendant–Appellee.

No. 1 CA–CV 88–261.

Court of Appeals of Arizona,
Division 1,
Department B.

May 31, 1990.

Review Denied Dec. 18, 1990.*

* Feldman, V.C.J., of the Supreme Court, voted to grant review on Issues A, C and D.

222

Steven M. Friedman, Dain K. Calvin, Phoenix, for plaintiffs-appellants.

Holloway & Thomas, P.C. by Benjamin C. Thomas, Craig W. Phillips, Phoenix, for defendant-appellee.

## OPINION

VOSS, Judge.

Claudia and Norman Bruce and their children (collectively, Bruce) appeal from summary judgment for appellee Chas Roberts Air Conditioning, Inc. (Roberts) on the Bruce claims for negligence. ' Claudia and Norman Bruce were injured in a collision with a Roberts' employee, Michael Duarte, (Duarte). This appeal presents the following issues for our consideration:

(1) whether under *Keckonen v. Robles,* 146 Ariz. 268, 705 P.2d 945 (App. 1985), Roberts had a duty to protect Bruce from injuries caused by Duarte;

(2) whether A.R.S. § 4–301 forecloses Roberts' liability;

(3) whether Roberts may be liable for Duarte's negligence under the doctrine of *respondeat superior;* and

(4) whether under the *Restatement (Second) of Torts,* § 317 (1965), Roberts may be liable for failing to control the conduct of Duarte.

## FACTS

On appeal from summary judgment we view the record in the light most favorable to the party against whom judgment was taken. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985). Roberts is an air conditioning contractor. Roberts was installing air conditioners for Del Webb in new homes in the Sun City West area. Near the job site, Roberts had exclusive use of an enclosed yard that measured about 100 feet by 150 feet. Fifteen or twenty installers worked for Roberts from that yard, including Duarte, who worked for Roberts since 1983.

Nick Arico, a subforeman for Roberts, testified in deposition that most of Roberts' workers usually came back to the yard at 1:30 or 2:00 p.m. (an installers work day normally began at 6:00 a.m.), but would sometimes return earlier, especially on Fridays. One reason employees returned to the yard was to retrieve their personal vehicles. It was not unusual for some of the workers to remain after work and socialize at the yard. Occasionally, the socialization included drinking pop and beer. At these gatherings Arico sometimes placed boxes around the yard for the disposal of trash, papers and beer cans.

Roberts' supervisors knew about the workers' occasional beer drinking at and around the yard. During such gatherings, if a Roberts' worker came to the yard from another job and asked for help, it was not

uncommon for other workers to leave the yard and supply the requested help. Roberts had a policy that if a worker finished a job early, (i.e. they finished an eight hour job in six hours), they got paid for the whole eight hour day.

In the early afternoon on Friday, October 18, 1985, most of the Roberts' workers finished their work and returned to the Sun City West yard. Among them was Duarte. Though Duarte finished his work in less than eight hours, he was paid for the full day. Duarte and his co-workers joined in a spur-of-the-moment volleyball game and picnic at the yard. At this picnic the workers drank beer, cooked hamburgers, and played volleyball. Two Roberts' supervisors, Chris Burkhardt and Nick Arico, were present.

After the picnic began, Duarte and other employees left to buy beer. Duarte purchased a six pack and returned. He left it in his pickup truck, which was parked outside the yard. Between noon and 3:00 p.m. Duarte periodically drank beer from the cooler in his pickup and continued to participate in the volleyball game and picnic. Duarte primarily drank his beer outside the fence during breaks between volleyball games, however, if another game started and he still had beer to drink, he would take it with him into the yard. As before, no one from Roberts told Duarte not to drink beer at the picnic. The workers would have stopped drinking beer at the picnic if the supervisors requested. Roberts did not provide any of the beer at the picnic.

Duarte left Robert's yard between 3:00 and 3:15 p.m. in his pickup truck. In the opinion of Lucien Haag, Bruce's expert, Duarte's blood-alcohol content would have been between .27% and .29% at 3:00 p.m., and to an unimpaired person he would have been visibly intoxicated. Duarte's truck ran out of gas as he was driving home. He spent some time walking toward home on 67th Avenue, but decided to return to his truck and try to prime the carburetor. He did so successfully, and continued home at approximately 6:00 p.m. While driving home he collided head-on with Bruce's vehicle.

Roberts moved for and was granted summary judgment.

## ANALYSIS OF ISSUES ON APPEAL

### a. *Applicability of Keckonen.*

■ Both sides rely on Division Two's decision in *Keckonen,* in support of their respective positions on appeal. Bruce relies on footnote number 3 in *Keckonen* which reads as follows:

> For the purposes of this opinion we have assumed but have not decided that there could have been some liability on the part of Neil's as the owner of the premises and have further assumed but not decided that there was sufficient proof that Robles was intoxicated when he left his employer's premises to go to the Rusty Nail Tavern.

*Id.* 146 Ariz. at 272 n. 3, 705 P.2d at 949 n. 3. Bruce argues that the footnote means that an employer is under a duty to protect third persons from injuries caused by an employee who leaves the employer's business premises at the end of the work day in an incapacitated condition. Roberts urges that *Keckonen's* facts are similar to those before us, and interprets *Keckonen* to require a holding that Roberts owed no duty to Bruce on which liability could be founded. We agree with Roberts.

In *Keckonen,* James Robles, an employee of Neil's Detroit Diesel, Inc., participated in a social gathering on Neil's premises after working hours. The participants, including the branch manager and branch service manager, collectively bought and drank a case of beer at the gathering. After leaving the work party, Robles drank more beer at a bar. Thereafter, Robles collided with two oncoming cars. The plaintiffs sued Neil's for negligence. On appeal from a grant of summary judgment for Neil's, Division Two affirmed.

The court in *Keckonen* stated that the sole issue on appeal was whether liability for negligently providing liquor to an intoxicated person, to which the supreme court subjected licensed sellers of liquor in *On-*

**224**

*tiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983), should be extended to persons other than licensed sellers of liquor.[1] The court referred to all categories of nonlicensees as social hosts. After considering the applicable law and noting that except for the state of New Jersey,[2] all the state courts that have considered the question of extending the liability of the nonlicensee, or social host, had declined to do so, the *Keckonen* court held:

> We do not believe that reasonable persons would extend to the social host the liability imposed upon the tavern keeper. The consequences of imposing such a duty are economically and socially staggering. Considering the public and social requirements, the consequences of extending liability, and the reasons for not extending it mentioned in the cases which we have previously cited and in the article by DeMoulin and Whitcomb (except for the proximate cause argument), we decline to extend liability to the social host.

146 Ariz. at 272, 705 P.2d at 949.

We do not agree with Bruce's argument that footnote 3 in *Keckonen* holds that an employer has a legal duty to protect third persons from injuries caused by an employee who leaves his employer's business at the end of a work day in an incapacitated condition. In *Keckonen* the court declined to extend to nonlicensees the duty created in *Ontiveros*. The court did not, as Bruce suggests, foreclose liability only for the social host. The context of the footnote makes clear that Division Two meant only that it had assumed for purposes of discussion that Neil's was the "host" because Neil's owned the premises in question not that an employer could be liable. *Id.* at 272 n. 3, 705 P.2d 949 n. 3.

*Keckonen* does support the proposition that a nonlicensee, in this case as in *Keckonen* an employer, is not liable when it serves or furnishes liquor to intoxicated persons. The facts here are less egregious than those in *Keckonen* as Roberts' supervisors did not purchase any of the beer at the picnic. Therefore, applying the holding of *Keckonen*, Roberts, as a nonlicensee, is not liable for Duarte's actions.

**b.** *A.R.S. § 4–301.*

Bruce argues that A.R.S. § 4–301 does not apply to foreclose liability because the statute only addresses social host and not employer liability. Alternatively, Bruce maintains that if we do find the statute applicable, we must also find that it is unconstitutional as violative of the Arizona Constitution, art. 18, § 6. Roberts urges that the statute does apply to bar liability. We agree with Roberts that the legislature has acted to bar its liability.

Arizona Revised Statutes § 4–301 provides:

> *A person other than a licensee* or an employee of a licensee acting during the employee's working hours or in connection with such employment *is not liable* in damages to any person who is injured, or to the survivors of any person killed, or for damage to property, which is alleged to have been caused in whole or in part by reasons of the furnishing or serving of spirituous liquor to a person of the legal drinking age.

(Emphasis added.) A.R.S. § 4–101(22) includes in its definition of "a person" a company, corporation, partnership or association. Thus the legislature, by adopting A.R.S. § 4–301, foreclosed liability for anyone, other than a licensee and his or her employees, for injuries resulting from the serving or furnishing of alcohol. *See Dewitt v. Magma Copper Co.*, 16 Ariz.App. 305, 492 P.2d 1243 (App.1972) (fundamental rule in interpreting a statute is to ascertain and give effect to the legislature's intent).

---

**1.** We have recently expanded *Ontiveros* but not in the direction Bruce suggests. In *Carrillo v. El Mirage Roadhouse*, 164 Ariz. 364, 793 P.2d 121 (1990), we held that the duty articulated in *Ontiveros* is broad enough to include an indirect furnishing, selling, or serving of alcohol to intoxicated persons; we did not address nonlicensee—or social host—liability.

**2.** *See Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984).

■ The reference to "social host" in the section heading of A.R.S. § 4–301 does not change our interpretation. First, section headings do not constitute part of the law. A.R.S. § 1–212. The headings can be used to aid interpretation when ambiguity exists. *Arizona Foundation for Neurology and Psychiatry v. Siernerth*, 13 Ariz.App. 472, 477 P.2d 758 (1970). Here, no ambiguity exists. A.R.S. § 4–301 clearly limits liquor liability to licensees. Second, the term social host is not a restrictive term. It refers to all categories of persons as enumerated in A.R.S. § 4–101(22) who are nonlicensed providers of alcohol.

The present case is less remarkable than that contemplated by the legislature in A.R.S. § 4–301. Here, Roberts did not furnish or serve beer to Duarte. If the statute forecloses liability for "a person" when they furnish or serve alcohol, certainly there cannot be liability for Roberts who only observed his employees but did not furnish, serve, or provide beer in any way.

■ Bruce argues that if we find A.R.S. § 4–301 bars Roberts' liability, then we must also find that the statute is unconstitutional because it violates the Arizona Constitution, art. 18, § 6. We disagree. We will not declare a legislative act unconstitutional unless we are satisfied beyond a reasonable doubt of its unconstitutionality. *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 641 P.2d 1275 (1982). This court will strive to uphold statutes as constitutional. *State v. Superior Court of Pima County*, 155 Ariz. 403, 747 P.2d 564 (App.1986), *approved* 155 Ariz. 408, 747 P.2d 569 (1987).

Article 18, § 6 provides:

The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

Article 18, § 6 only applies to rights recognized by common law at the time the Arizona Constitution was adopted. *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 730 P.2d 186 (1986); *Schoenrock v. Cigna Health Plan of Arizona, Inc.*, 148 Ariz. 548, 715 P.2d 1236 (App.1985). Arizona's common law, which includes the rule of nonliability for tavern owners, logically also includes social hosts and employers.[3] *See Ontiveros*, 136 Ariz. 500, 667 P.2d 200 (where the court acknowledged that in the common law a tavern owner was not liable). *Keckonen*, 146 Ariz. at 271–72, 705 P.2d at 948–49; *Collier v. Stamatis*, 63 Ariz. 285, 162 P.2d 125 (1945); *Pratt v. Daly*, 55 Ariz. 535, 104 P.2d 147 (1940). Therefore, since the tavern owner, social host, and employer were not liable at common law A.R.S. § 4–301 is constitutional.

Furthermore, as this court stated in *Keckonen:*

[S]ince the ratification of the Twenty-first Amendment to the United States Constitution virtually every aspect of the manufacture, sale and distribution of alcoholic beverages has been regulated by the legislature and any policy modifications which are designed to encompass the potential liability of social providers of intoxicating beverages should be left to the sound discretion of the legislature.

146 Ariz. at 270, 705 P.2d at 947. To the facts here, the legislature has spoken.[4]

Although A.R.S. § 4–301 is dispositive, we feel it is appropriate to meet Bruce's remaining issues, the resolutions of which also foreclose Roberts' liability.

---

**3.** The Arizona Supreme Court in *Schwab v. Matley*, 164 Ariz. 421, 793 P.2d 1088 (1990), in dicta stated that even before *Ontiveros* it had been the common law rule in Arizona that a tavern owner could be liable under negligence principles. If a common law right to a civil damage remedy existed for tavern owners, and arguably social hosts or employers, then the constitutionality of A.R.S. § 4–301 is suspect. However, adopting the language of the supreme court in *Ontiveros*, we find the statute constitutionally sound, "at common law, however, a tavern owner is not liable for injuries sustained off-premises by third persons as a result of the acts of an intoxicated patron, even though the tavern owner's negligence in serving the patron was a contributing cause of the accident."

**4.** Like the court in *Ontiveros*, we have chosen to follow legislative intent. In *Ontiveros* the court found civil liability partly based on A.R.S. § 4–244(14). Here we find no civil liability based on A.R.S. § 4–301.

**226**

c. *Respondeat superior.*

■ Bruce contends Roberts is liable for Duarte's negligence under the doctrine of *respondeat superior.* Division Two has stated:

The conduct of a servant is within the scope of employment only if (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master.

*Anderson v. Gobea,* 18 Ariz.App. 277, 501 P.2d 453 (1972). In *Robarge v. Bechtel Power Corp.,* 131 Ariz. 280, 283, 640 P.2d 211, 214 (App.1982), we stated:

[C]ertain specific facts must be present at the time of injury in order to hold an employer vicariously liable for the negligent acts of his employee: (1) the employee must be subject to the employer's control or right of control; (2) the employee must be acting in furtherance of the employer's business.

The conduct of an employee who is going to or coming from his place of work is generally not within the scope of his employment. *Faul v. Jelco, Inc.,* 122 Ariz. 490, 595 P.2d 1035 (App.1979).

■ Bruce acknowledges that generally hazards encountered by employees while coming to and going from work are not within the scope of employment. However, they argue that the special hazards exception to the coming and going rule recognized in *Kerr v. Industrial Comm'n,* 23 Ariz.App. 106, 530 P.2d 1139 (1975), and the dual purpose exception to the rule discussed in *Anderson* and *Faul* apply in the present case. We do not agree. The special hazards rule discussed in *Kerr* is appropriately applied only in determining whether an injury suffered by a commuting employee renders him eligible for worker's compensation benefits. *See generally Robarge,* 131 Ariz. 280, 640 P.2d 211. In any event, it does not apply on the facts of this case. Duarte's negligent conduct, for which Bruce seeks to hold Roberts liable under the doctrine of *respondeat superior,* was his driving a motor vehicle while drunk. Drunk driving was not the kind of

conduct for which Roberts employed Duarte. While driving home Duarte was not subject to Roberts' control or right of control and the activity was not actuated even in part by a purpose to serve Roberts. Furthermore, the accident occurred three hours after Duarte left the yard.

■ We also find the dual purpose exception to the coming and going rule inapplicable because it applies only when, in addition to merely commuting, the employee performs a concurrent service for his employer that would have necessitated a trip by another employee if the commuting employee had not been able to perform it. Nothing like that occurred in this case. When the accident occurred, Duarte was driving home and was not performing a concurrent service for Roberts.

In *Dickinson v. Edwards,* 105 Wash.2d 457, 716 P.2d 814 (1986), on which Bruce relies, the Washington Supreme Court adopted a unique, fact-specific reformulation of the doctrine of *respondeat superior.* The court held that a plaintiff may recover from a banquet-hosting employer if the following prima facie case is proven:

1. The employee consumed alcohol at a party hosted by the employer which was held to further the employer's interest in some way and at which the employee's presence was requested or impliedly or expressly required by the employer.

2. The employee negligently consumed alcohol to the point of intoxication when he knew or should have known he would need to operate a vehicle on some public highway upon leaving the banquet.

3. The employee caused the accident while driving from the banquet.

4. The proximate cause of the accident, the intoxication, occurred at the time the employee negligently consumed the alcohol.

5. Since this banquet was beneficial to the employer who impliedly or expressly required the employee's attendance, the employee negligently consumed this alcohol during the scope of his employment. The employer is, therefore, vicariously liable under *respondeat superior* on the ground that the proximate cause of the

accident occurred while the employee was acting within the scope of his employment. This action does not affect the "going and coming" rule since it asserts that the proximate cause of the accident occurred at the banquet, before the employee even attempted to drive away.

105 Wash.2d at 468–69, 716 P.2d at 820.

Instead of setting forth a new application of the doctrine of *respondeat superior*, the *Dickinson* court promulgated a new and qualitatively different principle of vicarious liability. We agree with the following portion of Justice Durham's dissent:

Respondeat superior is an agency theory that imposes liability on the master for the tort of his servant committed in the "scope of employment". (Citations omitted.) Although we have used different wording to articulate when a employee is within the scope of employment, we have always required that a nexus exist between the employee's activity and the employer's interest before we imposed vicarious liability on an employer. (Citations omitted.) We have consistently required that the nexus exist at the time that act that results in injury occurs. (Citations omitted.) The majority abandons this fundamental requirement by finding the nexus prior to this time.

In so finding, the majority holds an employer liable for the negligent acts of his employee, even though no employment relationship existed when the act upon which liability is predicated occurred.

105 Wash.2d at 491–92, 716 P.2d at 832.

Our rejection of *Dickinson* notwithstanding, its rule does not apply here. Unlike *Dickinson*, Roberts did not host a banquet to honor its employees nor did it provide the alcohol consumed by Duarte. The common thrust of the decisions imposing liquor liability is the *furnishing* of alcohol when a reasonable person would not. That conduct is the *misfeasance* described in *Keckonen* and *Ontiveros*. In the present case Duarte purchased his own alcoholic beverages and drank the beer outside the yard. Furthermore, though Roberts may have

stood to benefit from the presence of Duarte and his fellow employees at the picnic, there is no evidence that Duarte or any other employee's presence was "requested or impliedly or expressly required" by Roberts. We find a distinct difference between requiring employees to attend a party where the employer supplies all the alcohol, and observing employees in an impromptu picnic.

### d. *Employer's independent duty of care.*

Bruce also urges that, under the *Restatement (Second) of Torts* § 317, Roberts had a duty to exercise reasonable care to prevent Duarte from leaving his premises while intoxicated and that for breach of that duty, Roberts may be held independently liable for the resulting injuries.

■■■■ We will only follow the restatement absent case law to the contrary. *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668 (1979); *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958). *Keckonen* holds that an employer is not liable for the negligent acts of an employee occurring off the employer's property even though the employee became intoxicated on the employer's property and the employer knew the employee was intoxicated when he left his property. Therefore, we conclude that it is inappropriate to apply § 317 as it is contrary to Arizona case law.

Even if we considered § 317, it is inapplicable here. Section 317 states:

Duty of Master to Control Conduct of Servant.

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

Comment b to § 317 states:

[T]he master as such is under no particular duty to control the conduct of his servant while he is outside of the master's premises, unless the servant is at the time using a chattel entrusted to him as servant.

In this case Duarte's excessive drinking did not in and of itself create an unreasonable risk of bodily harm to others. What did so was Duarte's conduct in driving his pickup truck while intoxicated. That conduct took place away from Roberts' business premises and some three hours later. Roberts had no duty under § 317 to exercise care to control Duarte's conduct in any respect once he left the picnic and headed for home.[5]

We are aware of two cases from other jurisdictions which arguably expose an employer to liability on similar facts to those here under the principle of § 317. *See Romeo v. Van Otterloo*, 117 Mich.App. 333, 323 N.W.2d 693 (1982), on which Bruce relies, and *Gariup Construction Co., Inc. v. Foster*, 519 N.E.2d 1224 (Ind.1988). We find neither decision particularly well reasoned or convincing. We also note that the Michigan Supreme Court recently overruled *Romeo* in *Millross v. Plum Hollow Golf Club*, 429 Mich. 178, 196, 413 N.W.2d 17, 25 (1987), stating:

[W]e hold that the special relationship between employer and employee does not of itself require the employer to protect third parties from off-premises injuries, either by supervising the consumption of alcohol or providing alternate transportation.

429 Mich. at 196, 413 N.W.2d at 25.

*Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983), and *Robertson v. LeMaster*, 301 S.E.2d 563 (W.Va.1983), on

which Bruce relies, are distinguishable. In *Robertson* the employer forced his employee to work 27 hours straight without an opportunity to rest, and then permitted him to drive himself home. While driving home the employee apparently fell asleep at the wheel and caused an accident that injured the plaintiff. Reversing a directed verdict for the employer, the court stated that, "when such affirmative action is present, liability may be imposed regardless of the existence of a relationship between the defendant and the party injured by the incapacitated individual." 301 S.E.2d at 569. Nothing in the record here indicates that Roberts or any of its supervisors engaged in anything approaching the affirmative conduct on which the court based its holding in *Robertson*.

Similarly in *Otis Engineering*, the court held the employer liable for an employee's actions because the employer took control of an intoxicated employee by escorting him to his car and allowing him to drive away. Thirty minutes later, the employee caused an auto accident. 668 S.W.2d at 311. Unlike the situation in *Otis Engineering*, there is no evidence that Roberts or any of its supervisors took charge of or otherwise exercised control over Duarte within the meaning of the rule adopted by *Otis Engineering*. *See Restatement (Second) of Torts* § 319 (1965). We also note that four justices of the Texas Supreme Court strongly dissented in *Otis Engineering*, stating that an employer has no duty to exercise control over an off-duty employee, partly because the employer lacks the *legal right* to exercise control. 668 S.W.2d at 314.

We agree instead with decisions like *D'Amico v. Christie*, 71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896 (1987). In that case an employee of Monroe Tube was fired and told to leave the premises when his foreman smelled alcohol on his breath. The employee, while driving home, caused a fatal injury. On appeal the court rejected the plaintiffs' argument that the em-

---

**5.** Additionally, Bruce has failed to call to our attention any authority supporting the view that Roberts would have had a legal right to assert such control, and we are aware of none.

ployment relationship imposed a duty on Monroe Tube under § 317. The court held that the duty described by § 317 is "limited to torts committed by employees on the employer's premises or with the employer's chattels, and ... would be unavailing to plaintiffs because the accident occurred off the employer's premises and did not involve the employer's property." *Id.* 71 N.Y.2d at 82, 524 N.Y.S.2d at 7, 518 N.E.2d at 902. *Accord Pilgrim v. Fortune Drilling Co., Inc.,* 653 F.2d 982, 986 (5th Cir.1981); *Meyers v. Grubaugh,* 242 Kan. 716, 750 P.2d 1031 (1988).

Affirmed.

CONTRERAS, P.J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent. Distilled to their essence, the facts are that the employer, Chas Roberts Air Conditioning, Inc., allowed its employees to drink beer on its premises in furtherance of company business and that an employee so engaged left the employer's premises under the influence of alcohol and consequently became involved in the accident which gave rise to this lawsuit. Or so a trier of fact could find.[6]

I do not agree with the holding in *Keckonen v. Robles,* 146 Ariz. 268, 705 P.2d 945 (App.1985). I do not see the employer in this case as a "social host." Here, the employer used alcohol to further his business purpose. That being the case, I think that the correct principle to apply is the one adopted by the Supreme Court of Washington in *Dickinson v. Edwards,* 105 Wash.2d 457, 716 P.2d 814 (1986). In that case the employer, Kaiser Aluminum, put on a banquet to honor its long-time employees. Alcohol was served at the banquet, and an employee, Ersel Edwards, had a number of drinks. After he left the banquet, Edwards was involved in an automobile accident in which the plaintiff was injured.

The plaintiff sued both Edwards and Kaiser, and the trial court granted summary judgment in favor of Kaiser. The Supreme Court of Washington reversed. It ruled that if the proximate cause of the accident was the employee's negligent overconsumption of alcohol at a party hosted by the employer to further the employer's interests, and if the employee's presence was requested or impliedly or expressly required by the employer, the employer would be liable. *Dickinson,* 105 Wash.2d at 468–69, 716 P.2d at 820. It found the employer vicariously liable under the doctrine of *respondeat superior* because the proximate cause of the accident—the overconsumption of alcohol—occurred while the employee was at the banquet acting within the scope of his employment. *Id.*

The majority agrees with the dissent in *Dickinson,* which observed that the connection between the employer's interest and the employee's activity which caused injury must exist at the time of the act—meaning the accident—that results in injury. *Id.* at 491–492, 716 P.2d at 832. I do not agree with this because drinking has a prolonged effect. An employee who drinks, whether at a banquet or on the employer's premises while waiting for a work assignment, may leave and cause an accident some time later.

The majority also distinguishes *Dickinson* by observing that the employer in the case before us did not sponsor an event and did not furnish the beer its employees drank. Here, however, the employer benefitted from allowing the beer drinking on its premises because that activity kept employees available for performing additional work as the need might arise. I see no conceptual difference between asking employees to attend a work-related banquet where alcohol is served, and suffering them to drink alcohol on the employer's premises so that they will remain on hand

---

6. In their brief, as they did in their Response to the Motion for Summary Judgment, the plaintiffs assert that the employer benefited from allowing the beer drinking because it kept employees available at the employer's yard for performing additional work. The record supports this conclusion only by a thin inference. The employer, however, does not expressly dispute this inference, and the majority opinion assumes that the inference is supported by the evidence. So do I, and since I do there is no need to explore in detail whether the employer benefited in some other respect, such as by fostering employee good will.

for further work. In both situations, the employer is using alcohol to further his business purposes.

I also think that the Supreme Court of Washington's rationale in *Dickinson* bears on the interpretation of the *Restatement (Second) of Torts* section 317 (1965). Under that section, an employer has a duty to control his employee who is acting outside the scope of his employment if the employee is conducting himself so as to create an unreasonable risk of harm to others and if the employee is on the employer's premises. The majority points out that in the case before us the employee was not on the employer's premises at the time of the accident. True, but under the rationale of *Dickinson* the employee in the case before us was on the employer's premises at the time the employee did the act, or more precisely did one of the acts, that caused the accident. Chas Roberts Air Conditioning, Inc. had every right to tell its employee, Michael Duarte, not to drink beer on its premises. In short, I do not agree with the majority's conclusion that the employer could not be liable under the *Restatement* section 317.

The difference between the *Restatement* and *Dickinson* is, of course, that under the *Restatement* the employer would not be vicariously liable. Where the employer benefits from the employee's conduct, I believe that the rule laid down in *Dickinson* should apply.

Finally, I cannot ignore A.R.S. section 4–301. It provides:

> A person other than a licensee or an employee of a licensee acting during the employee's working hours or in connection with such employment is not liable in damages to any person who is injured, or to the survivors of any person killed, or for damage to property, which is alleged to have been caused in whole or in part by reason of the furnishing or serving of spirituous liquor to a person of the legal drinking age.

Since the employer in this case did not furnish liquor to the employee, the statute does not, by its terms, apply. I acknowledge that the law as I interpret it, juxtaposed with this statute, results in an anomaly. An employer, like the one in *Dickinson* who actually furnishes liquor would not be liable, while an employer which suffers its employee to drink in furtherance of a business purpose, may be responsible for injuries caused by that activity. The resolution of this anomaly is a problem for another day.