879 P.2d 538

**Beatrice WONG–LEONG, as Special Administrator of the Estate of Christopher Keith Chong, Deceased; Beatrice Wong–Leong and William Chong, Plaintiffs–Appellees/Appellants,**

v.

**HAWAIIAN INDEPENDENT REFINERY, INC.; Pacific Resources, Inc.; Chief Clerk of the First Circuit Court, State of Hawai'i, as Special Administrator of the Estate of Joshua T.K. Rellamas, Deceased, Defendants–Appellees, and John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Roe "Non–Profit" Corporations 1–10; and Roe Governmental Agencies 1–10, Defendants.**

**Brian D. SUGIMOTO, as Special Administrator of the Estate of Elizabeth Edna Kawailani Lacaran, Deceased; Brian D. Sugimoto, as Special Administrator of the Estate of Shasadee Cynthia Hoku Huali Okalani Lacaran–Chong, Deceased; Brian D. Sugimoto, as Prochein Ami of Kristy Allison Pohaikealoha Lacaran–Chong, a minor; and Eleanor Mae Lacaran, Plaintiffs–Appellants/Appellees,**

v.

**HAWAIIAN INDEPENDENT REFINERY, INC.; Pacific Resources, Inc.; Chief Clerk of the First Circuit Court, State of Hawai'i, as Special Administrator of the Estate of Joshua T.K. Rellamas, Deceased; Beatrice Wong–Leong,**

as Special Administrator of the Estate of Christopher Keith Chong, Deceased, Defendants–Appellees, and John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Roe "Non–Profit" Corporations 1–10; and Roe Governmental Agencies 1–10, Defendants.

No. 16747.

Supreme Court of Hawai'i.

Sept. 6, 1994.

Bert Sakuda (Keith K.H. Young of Cronin, Fried, Sekiya, Kekina & Fairbanks and Brian D. Sugimoto, with him on the briefs), Honolulu, for plaintiffs-appellants/appellees Brian D. Sugimoto and Eleanor Mae Lacaran.

George W. Playdon (M. Lorena Uy and Wayne S. Sakamoto of Reinwald, O'Connor, Marrack, Hoskins & Playdon, with him on the brief), Honolulu, for defendants-appellees Hawaiian Independent Refinery, Inc. and Pacific Resources, Inc.

Terence S. Yamamoto (Kenneth T. Okamoto and Sharon R. Himeno of Price, Okamoto,

Himeno & Lum, with him on the brief), Honolulu, for plaintiffs-appellants Beatrice Wong–Leong and William Chong.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Plaintiff–Appellee/Appellant Beatrice Wong–Leong[1] and Plaintiff–Appellant/Appellee Brian Sugimoto[2] (collectively Appellants) appeal the circuit court's order granting Defendant–Appellee Hawaiian Independent Refinery, Inc.'s (HIRI) motion to dismiss or in the alternative for summary judgment.[3] Wong–Leong and Sugimoto brought separate actions against HIRI alleging that HIRI was liable for the deaths caused by the drunk driving of one of its employees, Joshua Rellamas. HIRI consolidated the actions, and then obtained summary judgment on all claims, asserting that (1) as a matter of law, it cannot be held liable as a social host because Hawai'i does not recognize social host liability, and in any event, it was not a social host, (2) it is not liable for negligent failure to control Rellamas because it could not know of any foreseeable risk, nor did it permit the consumption of alcohol on HIRI premises, and (3) it is not liable under the theory of respondeat superior because Rellamas was not acting within the scope of his employment at the time of the accident.

Appellants opposed HIRI's motion, arguing that (1) because there is a business purpose and employment relationship, or employer benefit, in the use and consumption of alcohol on refinery premises in general, and specifically as part of refinery tradition in celebrating promotions, HIRI can be held liable under the theory of respondeat superior, (2) HIRI can be held liable for negligent failure to control its employee because, unlike the employers in previously decided Hawai'i cases, HIRI had the potential to control Rellamas and, in fact, actually exercised control, albeit negligently, in the instant case, and (3) *Johnston v. KFC Nat'l Mgmt. Co.*, 71 Haw. 229, 788 P.2d 159 (1990), does not dispose of their social host claim because that case can be distinguished by virtue of the alleged drug use by Rellamas and the frequency of alcoholic consumption on HIRI's premises.

After the circuit court ruled in favor of HIRI, Appellants moved for and were granted a Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) certification of final judgment and subsequently filed a timely notice of appeal. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

### A. Incidents Leading to the Accident

On June 11, 1989, Rellamas crashed into a vehicle carrying Christopher Chong, Elizabeth Lacaran, and Shasadee Lacaran–Chong. All four were killed in the two-car accident. The medical examiner determined that alcohol and marijuana[4] consumed by Rellamas

1. Wong–Leong is Special Administrator of her son Christopher Chong's estate. Christopher was killed in the accident that is the subject of this suit. Wong–Leong also sues in her individual capacity along with William Chong, Christopher's father.

2. Sugimoto is Special Administrator of the estates of Elizabeth Lacaran and Shasadee Lacaran–Chong, both of whom were killed in the accident that is the subject of this suit. Shasadee is the daughter of Elizabeth and Christopher. Sugimoto also represents Kristy Lacaran–Chong, a minor, as prochein ami or next friend; Kristy, who is Shasadee's sister, was not involved in the accident. Eleanor Mae Lacaran is also a named Plaintiff–Appellant/Appellee.

3. HIRI's motion was entitled and referred to throughout the record as a "motion to dismiss or in the alternative, for summary judgment." Ha-

waii Rules of Civil Procedure (HRCP) 12(c), provides that "if ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Thus, because HIRI's motion and memorandum in support and Appellants' memo in opposition included affidavits and depositions, and the court apparently considered them, this case is treated as an appeal from an order granting summary judgment. In its order, the circuit court dismissed all claims against HIRI, but noted that all claims against all other parties remained.

4. Although no one witnessed Rellamas smoking marijuana on the day of the accident and there is no evidence suggesting when or where the marijuana was consumed, it may be inferred, for the purposes of a motion for summary judgment, that Rellamas consumed the marijuana at the

were contributing factors to the fatal accident.

Rellamas was employed by HIRI at its Campbell Industrial Park refinery. He was returning home after drinking beer at a party celebrating his recent promotion. The party consisted of about nine co-workers and was held at the picnic area on HIRI's premises. The record reflects that, in keeping with an apparent tradition of celebrating promotions at HIRI, Rellamas provided money and had a co-worker purchase beer for the party. The party started at about 6:00 p.m. and continued until about 7:30 p.m., when the evening shift supervisor directed the workers to leave the premises. Rellamas was on his way home from the party when the accident occurred at about 8:30 p.m. He did not make any stops between leaving work and the accident.

### B. *HIRI Parties and Procedures*

The affidavits and depositions before the court on HIRI's motion for summary judgment reveal the following facts: The consumption of beer at HIRI was extensive, taking place nearly every day. Specifically, three main events involving alcoholic consumption regularly occurred at the refinery: 1) pau hana (end-of-work) parties on the last Friday of every month; 2) playing horseshoes almost daily; and 3) "mini" parties for promotions, birthdays, babies, vacations, and other similar events. All of these events took place in the picnic area on HIRI's property, next to the parking lot but outside the fence enclosing the refinery's operations. HIRI placed picnic tables and a grill in the area. There was also an eighteen cubic foot "cooler" constructed by HIRI's maintenance department for the drinks.

The deposition testimony reveals that an apparent tradition of holding pau hana parties began sometime around late 1974. During the initial years, HIRI sponsored these parties, paying for the food and alcohol. The maintenance department coordinated the

events and received a company check from HIRI's downtown office to buy the supplies. An employee would purchase the food, beer, and wine using these funds. Sometime between 1979 and 1981, HIRI stopped supplying the alcohol, but continued to provide money to purchase food. Thereafter, contractors who were not employees of HIRI, but who were working on the premises, would provide the alcohol for the pau hana parties. These parties continued as a regular event until after the Rellamas accident.

Parties were also held regularly for promotions, birthdays, and other events. These parties were not as extensive as the pau hana parties and were not paid for by the company or contractors. At promotion parties, the promoted workers provide the beer, much like Rellamas had done for his promotion party.

The horseshoe club gatherings consisted of various HIRI employees who got together after their shifts to throw horseshoes and drink beer. The club met practically every day. At most, if not all of these gatherings, the drinks were stored in the cooler provided by HIRI.

Deposition testimony revealed that the company and its managers obviously knew about the different parties and drinking get-togethers. In fact, supervisors often attended these parties. Kennard Vandergrift, the Refinery Administrative Manager, testified that around 1985 HIRI instituted a policy prohibiting consumption of alcoholic beverages in the refinery at any time. Vandergrift also noted, however, that this policy only governed the area inside the fenced-in portion of HIRI's property; consumption of alcohol was not prohibited in HIRI's picnic and parking lot area. After further questioning, Vandergrift admitted that "[t]he company tolerated [the drinking, but] certainly didn't encourage it in any way."

Furthermore, Shift Supervisor Don Drogowski testified that a petition was circulated about a year before the accident requesting

---

worksite. A co-worker, in a deposition, testified that he witnessed Rellamas smoking marijuana on the premises on previous occasions. Furthermore, the substance was in his system at the time of the accident, there is no evidence that mari-

juana was found in his car, and Rellamas did not stop anywhere between the refinery and the accident. There is no evidence, however, of any employer benefit in connection with the use of this illegal substance on HIRI premises.

that the "current practice, which allows employees to consume alcohol during lunch or break hours ... be reviewed by the policy task force and discontinued due to its safety sensitive nature." Approximately eighty-five employees signed this petition. Another company policy provided that no one could remain in the picnic area after 5:30 p.m. This policy was apparently not strictly enforced; on the night of the Rellamas accident, the group was in the picnic area drinking until after 7:30 p.m. In fact, the promotion party did not begin until after 5:30 p.m.

Finally, after the Rellamas accident, management discussed terminating the pau hana parties. Aldrich Kane, HIRI's Maintenance Manager, testified that alcohol was no longer served at the pau hana parties after the Rellamas accident, and that the parties themselves were discontinued about three to five months after the subject accident.

## II. *STANDARD OF REVIEW*

"On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts. Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law." *Reed v. City & County of Honolulu,* 76 Hawai'i 219, 225, 873 P.2d 98, 104 (1994). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Pacific Int'l Services Corp. v. Hurip,* 76 Hawai'i 209, 213, 873 P.2d 88, 92 (1994).

## III. *DISCUSSION*

### A. *Indirect Liability Under Respondeat Superior*

■ Under the theory of respondeat superior, an employer may be liable for the negligent acts of its employees that occur within the scope of their employment. *Henderson v. Professional Coatings Corp.,* 72 Haw. 387, 391–92, 819 P.2d 84, 88 (1991) (citing *Kang v. Charles Pankow Assoc.,* 5 Haw.App. 1, 675 P.2d 803 (1984), *cert. granted,* 67 Haw. 685, 744 P.2d 781 (1984), *aff'd mem.* (April 12, 1984) (No. 8917)). In *Henderson,* we cited the Restatement (Second) of Agency § 228 (1958) for the definition of "scope of employment":

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits; [and]
> >
> > (c) it is actuated, at least in part, by a purpose to serve the master[.]
>
> * * *
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Id.* at 392, 819 P.2d at 88. Thus, to recover under the respondeat superior theory, a plaintiff must establish: 1) a negligent act of the employee, in other words, breach of a duty that is the legal cause of plaintiff's injury; and 2) that the negligent act was within the employee's scope of employment. *Id.* at 391–92, 819 P.2d at 88; *Abraham v. Onorato Garages,* 50 Haw. 628, 632, 446 P.2d 821, 825 (1968) (citing *Matsumura v. County of Hawaii,* 19 Haw. 496, 500 (1909)); *see also Chastain v. Litton Systems, Inc.,* 694 F.2d 957 (4th Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2454, 77 L.Ed.2d 1334 (1983).

### 1. *The Allegedly Negligent Act*

■ The analysis of negligence under the theory of respondeat superior should focus completely on the actions of the employee, without consideration of the acts of the employer.[5] A plaintiff need not show any act or

---

5. Other jurisdictions have made the mistake of suggesting that an employer's direct acts of negligence should or can be analyzed in a claim seeking to impose respondeat superior liability. *See, e.g., Childers v. Shasta Livestock Auction Yard, Inc.,* 190 Cal.App.3d 792, 805, 235 Cal. Rptr. 641, 647 (1987) (presenting the hypothetical of a radioactive employee, where the risk of remote injury to third persons is created by the enterprise through a direct act of negligence).

fault of the employer when defining the allegedly negligent act in a respondeat superior claim.

In *Nordmark v. Hagadone*, 1 Haw.App. 487, 620 P.2d 763 (1980), the president and general manager of a radio station (Employee) was involved in an accident. During normal working hours and while driving a company car under the influence of alcohol, Employee rammed into the rear of a car stopped at a red light, injuring that car's occupants. Employee frequently left the station and drove the company car as part of his employment, but the accident occurred in a neighborhood whose residents were not generally a part of the radio station's listening audience. Employee asserted as an affirmative defense, under the doctrine of respondeat superior, that *at the time of the accident* he was acting within the scope of his employment. The radio station argued that both the location of the accident and the fact that Employee was intoxicated indicated that he was not acting within the scope of his employment. Nonetheless, the Intermediate Court of Appeals (ICA) affirmed judgment for the plaintiff.

In *Nordmark*, the ICA did not consider the question whether an employee's negligent act of drinking alcohol while aware that he or she must drive home is within the scope of employment. Hawai'i courts have addressed this issue, however, in *Henderson, supra, Kang, supra*, and *Costa v. Able Distributors, Inc.*, 3 Haw.App. 486, 653 P.2d 101 (1982). In all three cases, the court affirmed summary judgment in favor of the employer. The first two decisions involved accidents taking place subsequent to the consumption of alcohol at parties located off the employment site. In *Costa*, the plaintiff failed to support his allegation that drinking on-site was within the scope of defendant's employment; meanwhile, the record indicated that the alcoholic consumption took place at a

purely social event after work hours, with no evidence of any connection to the employer.

■ The above cases do not preclude an assertion of negligence prior to the actual accident. For reasons set forth below, we hold that a respondeat superior claim may be predicated upon the actor's allegedly negligent act of drinking while aware of the need to drive, provided that the act takes place within the scope of employment. Thus, respondeat superior liability may be imposed notwithstanding the fact that the foreseeable effects of the actor's negligent conduct occur outside the scope of employment. In so holding, we adopt the relevant reasoning of the United States Court of Appeals for the Fourth Circuit in *Chastain v. Litton Systems, Inc.*, 694 F.2d 957 (4th Cir.1982), the Oregon Supreme Court in *Chesterman v. Barmon*, 305 Or. 439, 753 P.2d 404 (1988), and the Washington Supreme Court's analysis of the issue in *Dickinson v. Edwards*, 105 Wash.2d 457, 716 P.2d 814 (1986).[6]

In *Chastain*, the court discussed the respondeat superior analysis in two parts: the negligent act, and whether that act was undertaken within the scope of employment. "[W]e believe [becoming intoxicated] is the critical time for determining whether the doctrine of respondeat superior should be applied." *Chastain*, 694 F.2d at 962.[7] In *Chastain*, an employer was sued when one of its employees drove through a red traffic light, struck another car and killed Gail Chastain. Earlier in the day, the employee had attended a Christmas party sponsored by his employer; the party was held on the employer's premises during working hours. On appeal of the trial court's grant of summary judgment, the evidence (viewed in the light most favorable to the victim) showed that the employer, through its employees, furnished alcohol to the tortfeasor. The Fourth Circuit noted that applicable state law (North Carolina) and common law did

---

6. We decline to follow *Dickinson* insofar as it requires a claimant to show that the employee's presence was "requested or impliedly or expressly required by [the employer,]" in order to establish a prima facie case of respondeat superior liability. *Id.* at 468, 716 P.2d at 820.

7. The court stated that it could not "accept [the employer's] argument that it is absolved from liability because [its employee] was not acting within the scope of his employment at the time of his collision.... This contention ... overlooks [the employee's] relationship with [his employer] *when he became intoxicated* [.]" *Id.* (emphasis added).

not impose social host liability, but nonetheless reversed the trial court, based primarily on the conclusion that the employee's negligent act was within the scope of his employment. *See* discussion *infra* section III.A.2. In reaching its decision, the Fourth Circuit obviously viewed the consumption of alcohol as the relevant act of negligence. Specifically, the court concluded that questions of fact remaining for the jury to decide included "whether [the employee's] excessive drinking at the party constituted negligence on his part; and, if so, whether his negligent intoxication continued until the time he collided with [victim] and constituted a proximate cause of the collision." *Id.*

In *Chesterman,* the Oregon Supreme Court acknowledged that for purposes of respondeat superior analysis, the important question relates to the act of the tortfeasor and not the consequences of the act. 305 Or. at 444, 753 P.2d at 407. The court explained that

> where, as here, there is a "time-lag" between the act allegedly producing the harm and the resulting harm[, t]he *focus should be on the act on which vicarious liability is based and not on when the act results in injury.*

*Id.* (citing with approval *Dickinson v. Edwards,* 105 Wash.2d 457, 716 P.2d 814 (1986)) (emphasis added). In *Chesterman,* an employee and president of a corporation took a "chocolate mescaline" pill, while still on the property of potential customers, to counter feelings of depression and give him enough energy to drive his boat to work. While driving, he began to hallucinate and stopped near a house where he believed a former friend once lived, entered the house, broke into plaintiff's locked bedroom and sexually assaulted her. The court held that summary

judgment in favor of the employer was not appropriate because the jury could find that the employee's allegedly negligent act of taking drugs 1) was within the scope of his employment, and 2) resulted in the commission of a tort against the plaintiff. *Id.* at 444, 753 P.2d at 406–07.

In *Dickinson,* the Washington Supreme Court's analysis of the respondeat superior issue centered, as in *Chastain,* on the point in time that the alcoholic drinks were consumed; liability attached to all injuries and damages proximately caused from that moment on.[8] The employer in this case hosted a banquet to honor its long-term employees. The employer provided food and alcoholic beverages, paid for use of the banquet facilities and accompanying services, and deducted all expenses as a business expense. After consuming a large amount of alcohol, one of the employees left the banquet and drove to work the night shift at the employer's plant. The employee struck and severely injured a motorcyclist while driving his car the wrong way up a freeway ramp. One element of the court's analysis was whether "[t]he employee negligently consumed alcohol to the point of intoxication when he knew or should have known he would need to operate a vehicle on some public highway upon leaving the banquet." *Id.* at 468, 716 P.2d at 820. The plaintiff was found to have stated a valid cause of action, for which summary judgment was not appropriate, where he asserted that "the proximate cause of the accident occurred at the banquet, before the employee even attempted to drive away." *Id.*

▮▮▮ Arguably, Rellamas' act of drinking while aware of the need to drive home thereafter can be viewed as a negligent act that was a legal cause of the particular accident before us.[9] *See Ono v. Applegate,* 62 Haw.

---

8. Although *Dickinson* involved a party hosted by the employer, the potential direct negligence of the employer apparently had no bearing on the court's analysis of respondeat superior liability. *See generally, id.* (limiting the court's discussion of the employer's acts, and the foreseeable consequences thereof, to the issue of direct negligence; avoiding same while considering the issue of vicarious liability).

9. The act of driving under the influence is clearly a negligent act; focusing on the act of driving,

however, does not advance Appellants' claim under the "scope of employment" aspect of our analysis. Generally, driving to and from work is not considered to be within the scope of employment, unless the employee's position requires him or her to remain on call or the employee is reimbursed for his or her travel. *See Pursley for Benefit of Clark v. Ford Motor Co.,* 462 N.E.2d 247, 249 (Ind.App.1984); *Biel, Inc. v. Kirsch,* 240 Ind. 69, 161 N.E.2d 617 (1959); *Pace v. Couture,* 150 Ind.App. 220, 276 N.E.2d 213 (1971). Here, Rellamas was driving his own car home; he was

131, 612 P.2d 533 (1980) (extending liability where the consumption, resulting inebriation, and subsequent injurious conduct were foreseeable intervening acts not sufficient to relieve the defendant of liability).[10] The record reveals that Rellamas was aware he had to drive home and yet, by becoming intoxicated, he impaired his ability to drive. Consequently, Rellamas' self-intoxication may have breached the general duty of due care he owed innocent members of the public and created a foreseeable risk of harm to them. Whether or not Rellamas breached this duty presents a question of fact for the jury.

There is sufficient evidence in the record to support a jury finding that Rellamas breached his duty of due care owed to the public based on the autopsy report, which indicates that Rellamas' blood alcohol content was .08 percent. Furthermore, testimony that Rellamas consumed two to three beers at the party, and a reasonable inference that he consumed marijuana at HIRI that day, provide additional support for a finding of negligence.

### 2. Within the Scope of Employment

 The second requirement for recovery under the doctrine of respondeat superior is

that the employee's negligent act must have been "within the scope of the employment." *Henderson*, 72 Haw. at 392, 819 P.2d at 88; *Onorato Garages*, 50 Haw. at 632, 446 P.2d at 825. Whether an employee is acting within the scope of his or her employment is ordinarily a question of fact to be determined in light of the evidence of the particular case. *Henderson*, 72 Haw. at 393, 819 P.2d at 89; *Kang*, 5 Haw.App. at 8, 675 P.2d at 808; *Nordmark*, 1 Haw.App. at 489, 620 P.2d at 765.[11]

 In determining the scope of employment, the applicable test is whether the employee's conduct was related to the employment enterprise or if the enterprise derived any benefit from the activity. *Henderson*, 72 Haw. at 394, 819 P.2d at 89; *Kang*, 5 Haw.App. at 11, 675 P.2d at 809. More specifically, as outlined in both *Henderson* and *Kang*, two key factors must be considered: 1) whether "the enterprise of the employer would have benefitted by the context of the act of the employee but for the unfortunate injury"; and 2) "whether the employer's risks are incident to [the] enterprise." *Henderson*, 72 Haw. at 395, 819 P.2d at 89. *Kang*, 5 Haw.App. at 11, 675 P.2d at 809.[12] Liability under the respondeat superi-

---

not reimbursed for his travel and his job did not require the use of his vehicle.

**10.** Foreseeability as a test for respondeat superior liability merely means that

[a] risk arises out of the employment when "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical or broadly incidental' to the enterprise undertaken by the employer." Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise.

*See Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 968, 227 Cal.Rptr. 106, 108–09, 719 P.2d 676, 678–79 (1986) (citations omitted). Foreseeability in this context is consistent with the underlying justification for the respondeat superior doctrine, which is "the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business." *Kang*, 5 Haw.App. at 10, 675 P.2d at 809.

**11.** In *Nordmark*, the ICA noted a trend towards liberalizing the definition of "scope of employment," thus enlarging an employer's tort liability under the theory of respondeat superior. *Nordmark*, 1 Haw.App. at 489, 620 P.2d at 764 (citations omitted).

**12.** In *Dickinson*, discussed in the previous section, evidence was adduced indicating that the party enhanced employee relations. 105 Wash.2d at 468, 716 P.2d at 820. Thus, the court determined that whether the banquet sufficiently benefitted the employer so as bring the activity within the scope of employment, or instead constituted a purely social function, was a question for the jury.

In *Chastain*, also discussed in the previous section, the court determined that it was an issue for the jury "whether the party was purely a social occasion, or whether it was sufficiently related to [the employer's] business to bring [the employee's] attendance within the scope of his employment." 694 F.2d at 962.

Similarly, in *Slade v. Smith's Management Corp.*, 119 Idaho 482, 808 P.2d 401 (1991), the Idaho Supreme Court held that it was "a jury question whether the party was held to further the employer's interest ... [where] evidence was

or theory, however, does not require fault or knowledge on the part of the employer.[13]

■ The three Hawai'i cases that are most closely related to the instant facts are *Henderson, Kang,* and *Costa.* As indicated previously, the court in each case affirmed summary judgment in favor of the employer. "[W]here the facts are susceptible of but one reasonable conclusion, the question [whether the employee is acting within the scope of his employment] may become a question of law for the court." *Henderson,* 72 Haw. at 393, 819 P.2d at 89 (citations omitted). In the instant case, however, this exception to the general rule regarding summary judgment does not apply. There are genuine issues of material fact relevant to the scope of employment that remain to be determined by a jury. Each of the cases is distinguishable with respect to the issues raised in Wong–Leong and Sugimoto's respondeat superior claim.

In *Henderson,* the employer sent several employees, including Hughes and McLean (also a part-owner of the company), to Kaua'i for a painting job expected to last approximately one month. While on Kaua'i, McLean allowed Hughes to use one of the company's rented cars to attend a party unrelated to the job. Hughes went to the party, became intoxicated, and later collided with (and injured) Henderson. Henderson sued under theories of respondeat superior and negligent entrustment. With respect to the respondeat superior claim, the court held that the enterprise theory did not apply because "the acts involved ... did not occur within authorized work hours and were not actuated, even in part, by a purpose to serve [the] employer." *Id.* at 394, 819 P.2d at 89. The only connection to the employer was that the company rented the car and the employer's part-owner gave Hughes permission to drive it on a personal journey. Consequently, the court observed that "[t]here was no intention to act in the employer's interest,

nor was there any direct benefit to the employer." *Id.* (citations omitted).

In *Kang,* defendant Glen Pluid was sent to Kaua'i by his employer. The employer paid Pluid his wages, a per diem subsistence allowance to cover housing and food expenses, and reimbursed him for travel from his home to the job site on a mileage basis. Pluid shipped his car, at his own expense, to Kaua'i for transportation. One day, Pluid went to a bar after work and consumed a few beers. He then went home and, a couple hours later, left to meet some friends. On the way, Pluid collided with a vehicle driven by Kang. Kang and his passenger were seriously injured. Kang sued Pluid's employer, claiming respondeat superior liability. Kang argued that it could be inferred that Pluid's act of driving from home to meet some friends was incidental to, and in furtherance of, the employer's business. Kang also argued that Pluid's presence on Kaua'i was incidental to his employment with Pankow. The ICA disagreed, noting that the accident occurred several hours after work, and that Pluid was neither coming from nor going to the worksite. *Id.* at 5, 675 P.2d at 806. The ICA held that Pluid was not actuated in any way at that time by a purpose to serve his employer. *Id.* at 9, 675 P.2d at 808. Refusing to extend the theory of respondeat superior to cover such situations, the ICA stated as follows:

> We do not believe that the respondeat superior doctrine is so pliant that where an employee is hired in one locality and relocated to another by his employer for an indefinite period of time, any act of the employee before, during, or after his working hours is one within the scope of his employment as long as he works for the employer in the latter locality.

*Id.*

Whereas *Henderson* and *Kang* involved drinking and driving incidents that clearly were not related to the negligent employee's

---

adduced that ... the party was held to improve Smith's employees' morale—as the district court worded it, 'good feeling'—in relations among themselves." 119 Idaho at 495, 808 P.2d at 414.

**13.** *See infra* note 16 (discussing the test of foreseeability in the context of a claim for negligent

failure to control, which requires particularized knowledge of the necessity and opportunity for exercising control, as distinguished from foreseeability in a respondeat superior claim, *see supra* note 10).

employment, nor benefitted the employer in any way, the following case provides closer guidance under the instant facts.

In *Costa*, the ICA considered an accident involving Richard Arata, who was president, manager and one of two employees of Able Distributors, Inc. (Able). Arata's friends regularly came to Able's premises after work to drink beer and socialize. After a few hours of drinking on one such occasion, the group left and Arata subsequently collided with and injured Costa. *Costa*, 3 Haw.App. at 487–88, 653 P.2d at 103. Costa appealed from a summary judgment in favor of Able, arguing that there was a genuine issue of material fact as to whether Arata was acting within the scope of his employment when he consumed the beer on company premises. *Id.* at 488, 653 P.2d at 103–04. Costa did not, however, file any counter-affidavits or documents. The record merely indicated that Arata and friends often discussed their common experiences and difficulties regarding Arata's former employer, and that they never discussed Able's business. *Id.* at 487–88, 653 P.2d at 103. Absent any contrary evidence to support Costa's claims, the ICA held that "Arata was not acting within the scope of employment. His actions were purely for his own benefit and not the company's." *Id.* at 490, 653 P.2d at 105.

Although the party in the instant case took place after work hours, the record reveals that it was held on HIRI's premises immediately thereafter. Despite factual similarities with elements in each of the above-cited cases, the instant facts as a whole, *see supra* section I, differ significantly. Considering the facts in a light most favorable to Appellants, a reasonable trier of fact could infer that the promotion party was a custom incidental to the enterprise rather than a purely social function. Arguably, the party may have been "actuated, in part, by a purpose to serve" HIRI, or at least "was of some direct benefit" to HIRI. *Henderson*, 72 Haw. at 394, 819 P.2d at 89. *See supra* note 12 (quoting authority for the proposition that boosting employee morale and furthering employer-employee relations are sufficient benefits to the enterprise for respondeat superior purposes).

HIRI's Maintenance Manager, Aldrich Kane, testified that the tradition of parties began shortly after his predecessor went "to the company asking for this pau hana thing as *a morale builder for the employees.*" (Emphasis added.) Shift Supervisor Joseph Drogowski testified that the horseshoe games and pau hana parties were not intended as family gatherings but were "for employees." He acknowledged further that these parties were "more *for company purposes.*" (Emphasis added.)

In his deposition, Kane noted that pau hana party attendance decreased significantly in the three-to-five months following Rellamas' accident. Alcohol was no longer served at the parties after the accident. Kane's testimony supports a reasonable inference that the presence of alcohol was a crucial ingredient of these parties, which were designed to boost employee morale and foster good will. According to Kane, during the many years of alcohol consumption at the pau hana parties, the horseshoe club gatherings, and the promotion parties, the HIRI administration discussed the propriety of these activities and possible efforts to control them, but "they never said stop it."

Drogowski testified that pau hana party attendance had already "died out substantially" (down from sixty or seventy people to just the contractors, who provided the beer, and a few HIRI employees) at least six months before the accident:

> People just weren't showing up because [sic] the attitude in the company. It was more or less a company, more or less a company function gathering. Gathering everybody together at the end of the month.
>
> People's attitude wasn't too great about management. So they didn't want to show up and drink beer with them.

Drogowski also testified, however, that supervisors continued to get together with their crews to celebrate birthdays, promotions, and other events.

Based on this testimony, viewed in a light most favorable to Appellants, a reasonable trier of fact could find that HIRI benefitted

either directly or indirectly from the promotion party.

HIRI relies heavily upon *Bruce v. Chas Roberts Air Conditioning,* 166 Ariz. 221, 801 P.2d 456 (1990), but the instant case is clearly distinguishable. The analysis in *Bruce* focuses on the time of injury, rather than the point in time that alcoholic drinks were consumed. *Id.* at 227, 801 P.2d at 462 (citing *Dickinson,* 105 Wash.2d at 491–92, 716 P.2d at 832 (Durham J., dissenting)). We have already rejected this approach. *See supra* notes 6 and 8 (qualifiedly adopting the majority view espoused in *Dickinson*).

The court in *Bruce* also held that the employer was not liable under the respondeat superior theory because

> though [it] may have stood to benefit from the presence of Duarte and his fellow employees at the picnic, there is no evidence that Duarte or any other employee's presence was 'requested or impliedly or expressly required' by [the employer]. We find a distinct difference between requiring employees to attend a party where the employer supplies all the alcohol, and observing employees in an impromptu picnic.

*Id.* at 227, 801 P.2d at 462 (quoting from *Dickinson*'s test for recovery from a banquet-hosting employer).[14] However, we have also declined to apply the "requested or impliedly or expressly required" element of the *Dickinson* test, *see supra* note 8, because "actual or possible control" over the employee is not required for a finding of respondeat superior liability. *See supra* note 10.

A reasonable trier of fact could find a sufficient nexus in the instant circumstances between the employee's negligent act (drinking while aware of the need to drive) and the employer's interest (fostering employee good will). The record provides support for a finding that there was a history and tradition of drinking activities in HIRI's picnic area,

and that this practice benefitted the enterprise. The trier of fact could reasonably find that Rellamas was acting within the scope of his employment when he negligently drank alcohol at this party; therefore, HIRI could be held vicariously liable for Rellamas' negligent act.

### B. *Direct Liability Claims*

#### 1. *Negligent Failure to Control*

Appellants raise an alternative argument that, even if Rellamas was not acting within the scope of his employment, HIRI may be held directly liable for failing to control Rellamas while he was on company premises.

The standards for this theory may be found in the Restatement (Second) of Torts § 317 (1965):

> § 317. Duty of Master to Control Conduct of Servant
>
> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (i) knows or has reason to know that he has the ability to control his servant, and
>
> (ii) knows or should know of the necessity and opportunity for exercising such control.

---

14. Regarding the issue of benefit to the employer, both the majority and dissenting opinions in *Bruce* apparently inferred from the record that "the employer benefitted from allowing the beer drinking because it *kept employees available at the employer's yard for performing additional work." See Bruce* (Kleinschmidt, J., dissenting), 166 Ariz. at 229 n. 6, 801 P.2d at 464 n. 6 (emphasis added); *see also id.* at 222–23, 801

P.2d at 457 (noting, in the majority opinion, that management knew the workers remained on the premises after work to drink beer). Given the clear benefit to the enterprise from this practice, "there [was] no need to explore in detail whether the employer benefitted in some other respect, such as *fostering employee good will." Id.* This latter possibility is an appropriate consideration in the instant case.

*See Onorato Garages*, 50 Haw. at 634, 446 P.2d at 826, and *Costa*, 3 Haw.App. at 490–91, 653 P.2d at 105 (adopting Restatement (Second) of Torts § 317 in this jurisdiction). Restatement § 317(a) applies under the instant facts, *see supra* section I, because Rellamas was drinking on HIRI's premises. Restatement § 317(b)(i) also applies because HIRI was aware of its ability to control the employees' conduct in the picnic area. A current HIRI supervisor testified that while the workers were in the picnic area, they were still under the employer's control. In fact, the record indicates that a plant supervisor ordered Rellamas and the other workers to leave the area. The remaining issue is whether Restatement § 317(b)(ii) has been satisfied.

In *Costa* the ICA wrote that:

[the employer's] duty *in this case* would arise only if [it] knew or should have known that [its employee] had a propensity for causing automobile collisions while driving under the influence of alcohol, and thus, should have prevented [its employee] from consuming beer on its premises. The record does not indicate any such knowledge or that [the employee] had any previ-ous collision or drunk driving arrests.

*Costa*, 3 Haw.App. at 491, 653 P.2d at 105 (emphasis added).[15] Although demonstrating an employer's knowledge of its employee's propensity for causing automobile collisions while DUI is one way to meet the requirements of Restatement § 317(b)(ii), that is not the sole method for establishing an employer's awareness of the necessity and opportunity for exercising control over its employees. *See Onorato Garages*, 50 Haw. at 633–35, 446 P.2d at 826.

*Onorato Garages* involved injuries incurred by the plaintiff as a result of a motor vehicle accident caused by the defendant's employee, who had prior convictions for the hit and run of a parked vehicle and for driving with a suspended license. *Onorato*

*Garages*, 50 Haw. at 629–30, 446 P.2d at 823–24. The defendant corporation was, however, unaware of—and had no reason to be aware of—the employee's driving record. In any event, the issue of alcohol consumption, much less abuse, was in no way involved in the case, and there was no suggestion that the defendant employed any other persons with dangerous driving records. The plaintiff filed a multi-count complaint against the defendant, including a claim of negligent failure to control under Restatement § 317. The circuit court granted summary judgment in defendant's favor and against the plaintiff on all counts of the complaint. *Id.* at 630, 446 P.2d at 824.

This court affirmed on appeal. Regarding the Restatement § 317 claim, this court noted that "[t]here was no evidence that [the defendant employer] was cognizant of any events which would have put it *on notice* that its [employee] needed supervising," *id.* at 634, 446 P.2d at 886 (emphasis added), although the defendant employer could be liable under Restatement § 317 "if it were found that [it] knew or should have known that [the employee] was a negligent driver." *Id.*

■■■■ *Onorato Garages* stands for the proposition that when an employer has no reasonable basis for knowing that its employees are engaging in on-premises conduct or conduct involving the employer's property, all of which is outside the scope of their employment, in such a way as to necessitate the exercise of control by the employer in order to protect others from an unreasonable risk of bodily harm, the employer can have no liability to an injured plaintiff pursuant to Restatement § 317. *Onorato Garages* does not insulate employers from potential liability to injured third parties under Restatement § 317 where they are on *actual notice* that, pursuant to traditions or practices that they themselves have instituted or condoned, their

**15.** Costa's claim for negligent failure to control specifically relied upon authority standing for the proposition that recovery *is possible where an* employer knows of its employees' propensity for misconduct. *See id.* at 491, 63 P.2d at 105. However, Costa merely set forth a "general allegation of negligence and gross negligence …

[without] specifically elucidat[ing]" his claims, *id.* at 490 n. 2, 653 P.2d at 105 n. 2; furthermore, he did not file any counter-affidavits or documents in opposition to the defendant's motion for summary judgment. *Id.* at 488, 653 P.2d at 103.

employees are systematically and consistently consuming alcohol on company premises after working hours, albeit outside the scope of their employment. Under such circumstances, and given a sufficient record, an employer can or should know of the necessity and opportunity for exercising such reasonable control over its employees as to avoid the foreseeable risk that an inebriated employee will injure a third party in a motor vehicle accident.[16] *See State v. Nakata,* 76 Hawai'i 360, 878 P.2d 699 (1994) (discussing the general relationship between alcohol consumption and psychomotor impairment and automobile operation, and impaired automobile operation and the actuarial probability of a motor vehicle accident).

■ Based on the evidence in the record in the instant case, *see supra* at 548–49, a reasonable trier of fact could find that the requirements of Restatement § 317(b)(ii) were met. Consequently, the trial court should not have granted Appellees motion for summary judgment with respect to this claim.

### 2. *Social Host*

■ Finally, HIRI correctly argues that *Johnston v. KFC Nat'l Mgmt. Co.,* 71 Haw. 229, 788 P.2d 159 (1990), precludes "social host" liability as alleged by Appellants.

### IV. *CONCLUSION*

HIRI cannot be held liable for its alleged independent negligence as a social host under our decision in *KFC.*

Appellants have, however, presented a colorable claim of liability under the theory of respondeat superior because the pleadings, affidavits, and depositions filed by Appellants raise genuine issues of material fact. On remand, two questions related to Appellants' respondeat superior claim are presented for the jury's consideration. The first is whether Rellamas acted negligently by drinking while aware that he had to drive (including

whether that act proximately caused the deaths of Christopher, Elizabeth and Shasadee). The second is whether the act of drinking at his promotion party was within the scope of Rellamas' employment—in other words, whether the party furthered a business purpose sufficient to impose respondeat superior liability. Of course, the issue of causation with respect to the accident is also a jury question.

Finally, Appellants have also presented a viable claim for negligent failure to control an employee under Restatement § 317.

We affirm the lower court's decision in part, reverse in part, and remand for proceedings consistent with this opinion.

**16.** Foreseeability as a test for negligence means a level of probability which would lead a prudent person to take effective precautions. *See Henderson,* 72 Haw. at 400, 819 P.2d at 92; *Ono,* 62 Haw. at 140, 612 P.2d at 540; *Onorato Ga-* *rages,* 50 Haw. at 634, 446 P.2d at 826. *See supra* notes 10 and 13 (distinguishing foreseeability in the context of a respondeat superior claim).