[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT CRYSTAL ROCK'S MOTION FOR SUMMARY JUDGMENT
In this case, the plaintiff alleges that on November 11, 1996, the defendant, Marecki, rear-ended her vehicle causing her injuries. At the time of the accident, Marecki was employed by the defendant Crustal Rock Spring Water Co. The plaintiff has sued the employer under the doctrine of respondeat superior. Crustal Rock has now moved for summary judgment claiming the doctrine does not apply and no genuine issue of material fact remains in dispute.
The defendant, Crystal Rock relies on several cases for its assertion that summary judgment should be granted in its favor. Quotes from several cases are made. It is said that for the doctrine of respondeat superior to apply . . . "it must be the affairs of the principal and not solely the affairs of the agent, which are being furthered." Larsen Chelsey Realty Co. v. Larsen232 Conn. 480, 501 (1995); . . . "a master is liable for the willful torts of his servant committed within the scope of the servant's employment and in furtherance of his (sic) mater's business." Id., p. 500 (emphasis added). As said in Levitz v.Jewish Home for the Aged, 156 Conn. 193, 198 (1968):" In the course of employment means while engaged in the service of the CT Page 14023 master and it is not synonymous with the phase `during the period covered by his employment.'" The defendant, Crystal Rock, concedes that while ordinarily the questions of whether or not an employee is acting within the scope of his or her employment is a question of fact, where the alleged acts are clearly outside the scope of authority the issue is one of law. Brown v. Housing Authority,23 Conn. App. 624, 628 (1990). The defendant, Crystal Rock, then proceeds to list a variety of facts which it assumes fit neatly into the legal tests set forth by the cases it alluded to in its brief.
In its discussion of the facts, however, an interesting dichotomy is set up for consideration. On the one hand, the defendant, Crystal Rock, notes that after drinking several beers, Marecki left to purchase cigarettes because the cigarette machine in the hotel was broken. At the time of the accident, Marecki was not driving a vehicle owned by the defendant, Crystal Rock, and he was not performing an act for the defendant, Crystal Rock, — he was acting solely for his own interest. At page 6 of its brief, the defendant asserts the day of the accident "was like any other day in which (Marecki) was the master of his time after work concluded. His participation in `happy hour' has no relation to that which the defendant, Crystal Rock, hired him to do," Affidavits of Marecki and other Crystal Rock employees state the company sponsored seminar ended at 3:00 p. m. They then went to happy hour in the Ramada Inn, where the seminar was held, but at a separate location from the seminar room. Marecki left to get cigarettes and was planning to return to socialize with his co-workers but no company function or business was involved after the seminar ended.
On the other hand, the defendant alludes to the fact that the plaintiff was asserting that the accident occurred while Marecki was driving under the influence of intoxicating liquor. In the affidavits referred to Crystal Rock employees along with Marecki state that Marecki did in fact drink several beers before he left to go get cigarettes. But all the affidavits state that the seminar ended at 3:00 p. m. and Marecki did not start drinking until 4:00 p. m.
If the first set of facts is controlling — that Marecki got in the accident while on a private venture of his own to buy cigarettes after the seminar was over — one wonders why it is important for the defendant to develop facts to the effect that any drinking also occurred after the seminar was over but CT Page 14024 before Marecki left to get cigarettes. In other words, if the controlling facts on a respondeat superior analysis are solely temporal in nature what does it matter that Marecki drank or did not drink at the seminar. If the seminar was in fact over at the time he left the Ramada Inn, if he was just going to buy cigarettes after any reasonably defined end of the working day and merely intended to return to a lounge located at the Ramada Inn to spend time with some friends who also worked with him but were just planning to socialize on their own post-work time, how could the defendant be held liable for Marecki's misadventure? Similarely, it might be argued, an employer would not be held liable for any accident an employee was involved in while driving home from work.
There is a reason that the defendant attempt to marshal the facts in this way. The problem for the defendant is that under a developing body of case law, the issue of when and where alcohol was consumed is critical for the respondeat superior analysis matter if any intoxication induced accident occurred after the employee left a company sponsored banquet party or seminar and was on his way home or a private venture. The court could find no Connecticut case directly on point but several commentators, articles and cases apply the doctrine of respondeat superior when employees are involved in accidents while going home after they attend a seminar or banquet sponsored by the employer for its benefit where the employer supplied or permitted the consumption of alcohol. In such a situation, a temporal analysis will not do — in other words, employer liability cannot be avoided merely because the employee has left the seminar or banquet — the relevant work site for the purpose of analysis.
That is, under ordinary circumstances a worker is not acting in the course of employment while going to or from work or while engaged in private ventures after the hours of work. Not surprisingly, this is called the "going and coming rule". In the leading case of Dickinson v. Edwards, 716 P.2d 814 (Wash. 1986), the defendant attended a banquet provided by Kaiser Aluminum and Chemical Corporation provided by Kaiser to honor long term employees. Liquor was provided by Kaiser. The defendant, Edwards, drank at the banquet and then left and while proceeding to work at Kaiser on the night shift, struck the plaintiff's car — he was cited for driving while intoxicated. The Washington Supreme Court overruled a ruling by an intermediate appellate court affirming the trial court's granting of a summary judgment motion in favor of Kaiser which had been sued on a respondeat CT Page 14025 superior theory. The Dickinson court held that a banquet-hosting employer may be sued under respondeat superior if the following prima facie case is proven:
 "1. The employee consumed alcohol at a party hosted by the employer which was held to further the employer's interest in some way and at which the employee's presence was requested or impliedly or expressly required by the employer.
 2. The employee negligently consumed alcohol to the point of intoxication when he knew or should have known he would need to operate a vehicle on some public highway upon leaving the banquet.
3. The employee caused the accident while driving from the banquet.
 4. The proximate cause of the accident, the intoxication, occurred at the time the employee negligently consumed the alcohol.
 5. Since this banquet was beneficial to the employer who impliedly or expressly required the employee's attendance, the employee negligently consumed this alcohol during the scope of his employment.
 The employer is, therefore, vicariously liable under respondeat superior on the ground that the proximate cause of the accident occurred while the employee was acting within the scope of his employment. This action does not affect the "going and coming" rule since it asserts that the proximate cause of the accident occurred at the banquet, before the employee even attempted to drive away.
 6. The inquiry, then, is whether the employee was within the scope of employment when he was drinking at the banquet. The initial focus would be on whether the banquet was a purely social function or sufficiently related to the employer's business to bring the employee's attendance within the scope of employment."
716 P.2d at page 820.
Another often cited case is Chastain v. Litton Systems, Inc.,694 F.2d 957 (?????, 1982). There, the employer argued against the application of the doctrine of respondeat superior stating the defendant employee, Beck, was not acting within the scope of his employment when he collided with another car after leaving an office party to go home in an intoxicated condition. The court CT Page 14026 said: "We cannot accept Litton's argument that it is absolved from liability because Beck was not acting within the scope of his employment at the time of his collision with Chastain. The contention confuses negligence with proximate cause. It overlooks Beck's relationship with Litton when he became intoxicated, which we believe is the critical time for determining whether the doctrine of respondeat superior should be applied. Again, the initial issue is whether the party was purely a social occasion or whether it was sufficiently related to Litton's business to bring Beck's attendance within the scope of respondeat superior. . ." The court felt that the trial court should not have granted summary judgment and certain issues had to be submitted to the jury which included "whether Beck's attendance at Litton's party and his consumption of alcoholic beverages could reasonably be considered to be within the scope of his employment; if so, whether his excessive drinking at the party constituted negligence on his part; and, if so, whether his negligent intoxication until the time he collided with Chastain and constituted a proximate cause of the collision." 694 F.2d at page 962. Cf Harris v. Trojan Fireworks Co., 174 Cal.Rptr. 452
(1981); also see Hawaiian Independent Refinery, Inc.,879 P.2d 538, 546 (Haw., 1994) (this case applied Dickinson reasoning to a situation where employer sued under respondeat superior did not actually provide liquor but permitted it to be served). These cases adopt the broad view that in determining scope of employment the test is whether the employee's conduct was related to the employment enterprise or if the employer derived any benefit from the activity, i.e. the banquet or other function. 174 Cal.Rptr. at page 456; 879 P.2d at page 546. Cases in this area are gathered in 51 ALR 4th 1048: "Intoxicating Liquors: Employer's Liability for Furnishing or Permitting Liquor on Social Occasion"; cf 18 Conn. L. Rev. 155 "Expanding Third Party Liability for Failure to Control the Intoxicated Employee Who Drives." The cases just discussed are based on a view well defined in several California cases used to determine respondeat superior responsibility in these types of situation. One court has said: "California has adopted the rationale that the employer's liability should . . . include risks inherent in or created by the enterprise because (the employer), rather than the injured party, is best able to spread the risk through prices, rates or liability insurance . . . One way to determine whether a risk is inherent in or created by an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of activity. However, `foreseeability' in this context must be distinguished from `foreseeability' as a test for negligence. In CT Page 14027 the latter sense, `foreseeability' means a level of probability which would lead a prudent person to take effective precautions whereas `foreseeability' as a test for respondeat superior merely means that in the context of the particular enterprise and employee's conduct is not so unusual or startling that it could seem unfair to include the loss resulting from it among other costs of the employer's business." Rodgers v. Kemper ConstructionCo., 124 Cal.Rptr. 143, 148 (1975) The Rodgers court noted that under the "modern rationale" for respondeat superior the test for determining vicarious employer liability is closely related to the test applied in worker's compensation cases for determining whether an injury arose out of the course of employment. For a good general discussion see Law of Torts, Harper, Fleming, 526.6 p. 23, et seq.
An employer arranges banquets and parties ultimately for its benefit in that such functions boost employee morale and foster communication between workers. If the employer provides liquor or permits it to be consumed at such functions it does so under the notion that it will contribute to the accomplishment of the purposes it had in mind when it planned the function in the first place. It is difficult to understand how then it could be said that an employee who gets intoxicated at the function and whose intoxication continues to the time he or she injures another due to the intoxication is not acting within the scope of employment even though the employee has left the function and is proceeding home or engaging in some other private venture — asDickinson says the cause of the injury producing event occurred while the employee was acting in the scope of employment. Certainly, under such circumstances any injury would seem to be foreseeable under the Rodgers or California analysis. Rigid common law rules such as the "going and coming" rule, nit-picking applications of the deviation from the employer's business test should not obscure the basic purpose of the doctrine of respondeat superior set forth in the most basic text of all, 27 Am.Jur.2d, § 459, p. 857.
 "Observation: The policy objectives underlying the imposition of respondeat superior liability are to prevent the recurrence of tortious conduct, to give greater assurance of compensation for the victim, and to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury. As a rationale for imposing vicarious liability upon the employer, it is also noted that the employer has the right to control the employee's conduct." CT Page 14028
This reasoning supports the imposition of liability where the injury causing employee gets intoxicated at a company sponsored party or banquet at which the employer provides liquor or permits its dispensing; liability also should be imposed where intoxication under the same circumstances occurs at a company sponsored training session — clearly held for the employer's benefit. At these type of functions, the employer has the ability to control the danger producing conduct — it could forbid the consumption of alcohol at its banquets or seminars, it could not provide the liquor and not permit employees to bring liquor. If the employer values the "conviviality" it believes alcohol adds to the functions it sponsors, the employer should be expected to pay for any carnage on the highway resulting from intoxication.
Although it does not explicitly refer to this line of cases in its brief as noted, Crystal Rock in effect tries to rebut the possible application of the position they stand for by its submission of the previously mentioned affidavits that the seminar was over by 3:00 p. m. and Marecki did not start drinking until 4:00 p. m. The defendant company, it could be argued, could not be said to have provided Marecki with liquor at its seminar or permitted alcohol to be distributed at a seminar which Marecki then consumed.
But the problem with granting summary judgment, is that at his deposition, Marecki, who at the time was and remains an employee of the defendant, said he consumed his first bottle of beer at 4:00 p. m., but when asked, "was that at the seminar? said Yes." He also said he was drinking with other people at the seminar. At the deposition he also testified that when he left to get cigarettes, other co-workers were present at the seminar area near a small table set up with a bartender. He said after he had purchased the cigarettes it was his intention to go back to the seminar but then confusingly said the seminar was over with at that point.
In his affidavit, Marecki tries to "clear" all this up by saying when he used the word "seminar" he meant the location of the seminar — at the Ramada Inn; he did not mean all these events occurred as part of the seminar function. Also there was no small table with a bartender in the seminar area — the "set up" for "happy hour" was at a separate location in the Ramada Inn, the Sandalwood Lounge, located at the address of the CT Page 14029 Ramada Inn, but having its own name and access separate from the seminar room. Several affidavits from other Crystal Rock employees also state Marecki did not drink at the seminar, it ended at 3:00 p. m. and they then went to the "happy hour" at the lounge along with Marecki who said, as noted, he had his first drink there at 4:00 p. m. Marecki, along with the other people who submitted affidavits, are all current Crystal Rock employees, were such at the time of the seminar and at the time the affidavits were submitted. The opportunities for impeachment are certainly present. Also Marecki's deposition was given under oath. It may be an open question whether Marecki's "admission" can be admissible against the defendant, Crystal Rock, at the time of trial. See Handbook of Connecticut Evidence, Tait 
LaPlante, § 11.5.6, p. 344, et seq. But the defendant seemed to assume the possibility of its use in these proceedings by its felt need to submit an affidavit by Marecki explaining away his deposition testimony. In any event, neither party had discussed this issue in their briefs and the question is fact based and probably better resolved at trial.
The court declines to grant summary judgment. The court is not deciding that the detailed requirements of Dickinson v.Edwards, supra, have been met so as to warrant a finding that respondeat superior applies here on the theory advanced in that case. But the court concludes that the record as presented precludes a fair judgment or that issue in light of the fact that the record raises the distinct possibility that Dickinson should apply here and the parties have not addressed the subject.
The motion is denied.
Corradino, J.